## John M. Crosland, Plff. in Err., *v.* James W. Shaw.

A property owner cannot interfere by force to prevent the workmen of a borough from pursuing a lawful business on the highway, because he believes that their work would occasion injury to his property; and if he

---

NOTE.—A police officer may arrest without warrant for a misdemeanor, when the offense is committed within his view, either at the time of its commission or immediately thereafter, or in fresh pursuit of the offender. Com. v. Cosler, 5 Northampton Co. Rep. 74, 8 Kulp, 97; Weiler v. Pennsylvania R. Co. 29 Pittsb. L. J. 347. But he cannot do so where he neither·.

persists in doing so, he may be arrested by a borough officer without a warrant.

(Argued February 13, 1888. Decided March 5, 1888.)

January Term, 1886, No. 413, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Schuylkill County to review a judgment for defendant in an action of trespass *vi et armis.* Affirmed.

The facts were, briefly, as follows: October 17, 1881, the defendant, who was chief of police of the borough of Pottsville, was directed by the borough authorities (after they had information that the plaintiff had interfered to prevent the workmen from laying a drain pipe on a public highway, and that he intended to continue doing so) to arrest the plaintiff—unless he would cease to interfere with the workmen. This plaintiff refused to do, and he was accordingly taken to the lockup, from where he was subsequently discharged on his promise not to interfere further.

Plaintiff subsequently brought this suit to recover damage for the indignities suffered and the unlawful imprisonment, claiming that the drain was used to convey sewerage from a neighboring property to his land, and that he was advised by his counsel to use all peaceable means to prevent this.

The plaintiff submitted the following points to be given to the jury, but they were all refused by the court:

1. That a police officer can only arrest a breaker of the peace in his view, without a warrant; and if he does thus arrest him, he can only detain him until he can bring him before a magistrate.

2. That, under the undisputed evidence in this case, there was no breach of the peace by Crosland, at the time of the arrest; and his arrest was therefore illegal, and the defendant is liable in damages.

3. That if the jury find in this case that there was malice and to find that there was, it is not necessary that the plaintiff should

sees nor hears. Com. v. Bryant, 9 Phila. 595. It must amount to a breach of the peace. Com. v. Collins, 15 Phila. 383; Com. v. Jayne, 11 Pa. Super. Ct. 459. Otherwise, the arrest is illegal. Com. v. Ridgeway, 2 Pa. Dist. R. 59, 9 Lanc. L. Rep. 347; Com. v. Krubeck, 8 Pa. Dist. R. 521, 23 Pa. Co. Ct. 35, 5 Lack. Legal News, 342.

have shown express malice; for if the jury find that the act done by Shaw was done wilfully and wrongfully, to the prejudice and injury of John M. Crosland, then all is shown that is required to be shown to make the act of Shaw malicious; and the plaintiff is entitled to damages.

4. That the jury in estimating the damages is not to be restricted to the actual loss, but may consider the pains and suffering, the wounded feelings of the plaintiff, and, if the act of Shaw was wanton, may give vindictive damages.

5. In an action for false imprisonment, even where there is no malice, the damages should be compensatory; and the jury are to take into consideration the plaintiff's loss of time, interruption to his business, and his suffering, bodily and mental, arising from the act; and if the jury find in this case that John M. Crosland was wrongfully arrested by Shaw, then they may consider the loss of time to the plaintiff, interruption to his business, his suffering, bodily and mental, arising from the act in estimating the damages.

6. In an action of this kind it is incumbent upon the defendant to show that the arrest and imprisonment were by authority of law; and this the defendant having failed to show in this case, the plaintiff is entitled to damages.

7. That if the jury believe that James W. Shaw had the right to arrest, yet if they find from the evidence that after said arrest said John M. Crosland asked for a hearing, and the said Shaw, the defendant, refused him the right to said hearing, then the said James W. Shaw became a trespasser *ab initio,* and the plaintiff is entitled to recover damages.

8. There being no evidence of any actual breach of the peace on the part of John M. Crosland, his arrest by James W. Shaw, the defendant, was unwarranted and illegal; and Shaw is liable in damages to the plaintiff, for said arrest.

The court, PERSHING, P. J., charged the jury, *inter alia,* as follows:

The question arises here, Was this a legal arrest on the part of the officer? Upon that subject the testimony of the plaintiff himself seems to me to justify his arrest. Without referring to any other testimony in the case, it appears that the workmen of the borough were sent to a public street over which the borough has the right to exercise control. It is necessary that the bor-

ough should have control of the public streets. The borough is bound to keep them in condition proper for travel. A failure to keep a public street in a condition fit for travel subjects the public officers to indictment, to be brought into court, convicted. and imprisoned. If any man is injured on a street in that condition, he has a right of action in the courts, (and we have them here frequently) for any injury he may sustain to his person or property in consequence of the bad condition of the public streets or roads.

The uncontradicted evidence here is that these parties went upon this public street for the purpose of relaying some pipe which it appears had been broken. They dug down to where the drain existed and undertook to put in new pipe. Mr. Crosland was determined that this should not be done, and undertook to prevent it. He states that he was advised by his counsel to use all peaceable means to prevent it. The use of peaceable means would be the use of lawful means, as I would understand such advice, coming from a lawyer—not violent means. It would seem from the evidence that these employees of the borough had opened up this ditch, and were in the act of laying pipe in it, when Mr. Crosland undertook to prevent them from doing so, and, according to his own testimony, destroyed at least three pieces of pipe. He said that he lifted up three stones carefully and let them drop, one at a time, each upon a piece of pipe, and the pipe would not stand the concussion, and was broken. While the employees of the borough went off to report, he says he proceeded and filled up the ditch. This was somewhere about 12 o'clock on October 17. In the afternoon the borough employees returned and again commenced to open up the ditch, for the purpose of laying pipe, when he undertook to prevent them. As they proceeded to throw the dirt out he attempted to throw it in; that is his own testimony, and he has shown to you how Mr. Seitzinger would hit his shovel on each attempt he made to throw the dirt back into the ditch when the employees of the borough were throwing it out. He states himself that he was informed by the borough supervisor, Mr. Dewald, that the orders were to put in the pipe, and that he informed Mr. Dewald that he should not do it. In the afternoon, during the time the excavation was going on, it appears that he entered into the excavation or ditch with an ax in his hand, took his seat upon a piece of pipe; and he states that his object in taking the ax there was to

break the pipe; that he was determined to break the pipe as they attempted to put it in.

Mr. Shaw, the chief of police, the defendant in the case, Mr. Crosland states, asked him to get up and come out of the ditch. Mr. Crosland replied that he would remain there if they buried him. Subsequently, Shaw took hold of him in the manner described and lifted him out of the ditch, and told him not to interfere. Mr. Crosland replied that he would interfere—that the pipes should not go in there. And he said: "I did again interfere, at least to some extent; and as he took me away I pushed a stone in with my foot." His testimony is that he refused to obey the request of the officer; that Mr. Shaw then told him that if he would not cease interfering with the men at work he would arrest him. Crosland says: "I told him I would interfere, by the advice of counsel. Shaw then said: 'I will arrest you.' I asked him for his warrant." He was then arrested.

Taking Mr. Crosland's own testimony of his conduct at that time and place, in full view of this officer, after being repeatedly warned, remonstrated with, that he persisted in breaking the property of the borough, which was, perhaps, just as much a breach of the peace as if any of you were to break a person's window, and that would be regarded as a breach of the peace—I think that the arrest was entirely proper and legal under the circumstances. Having come to that conclusion, we are compelled to say to you under the law as laid down by the supreme court, and as we understand it, that if he was abused afterwards, —we do not mean to say that there is any evidence here on that point, because we are not discussing that; if there were, it would have to be submitted to you; but, if there was any abuse afterwards, his action woud have to be a different action from that which has been brought; it would not be trespass *vi et armis.* We so understand the decision of the supreme court in the case read in your hearing which went up from this county, in which Judge Ryon took the question from the jury and decided as a question of law that the form of action was wrong, and the supreme court sustained his decision. Kennedy v. Barnett, 64 Pa. 141.

Therefore, we say to you that your verdict should be for the defendant. In doing this, we negative the points of the plaintiff, and affirm those of the defendant.

Verdict for defendant, and judgment thereon. Plaintiff took this writ, specifying for error the refusal to affirm his points and the portion of the charge above set forth.

*W. F. Shepherd* and *J. W. Moyer,* for plaintiff in error.— It has been decided that, to constitute a breach of the peace, it must be shown that there was an actual breach of the peace in order to justify an imprisonment. It is not enough to show that the plaintiff made a great noise and disturbance and refused to depart, and was in great heat and fury, ready and desirous to make an affray, and commit a breach of the peace. Wheeler v. Whiting, 9 Car. & P. 262; 2 Addison, Torts, Wood's ed. p. 23.

Because the street committee gave the order to connect the pipes and carry the foul water through Crosland's premises, and directed the policeman to arrest Crosland if he should offer interference to the connection, this would be no protection unless the order be such a one as the laws justify in its execution. Flinn v. Graham, 3 Pittsb. 199.

The court erred in saying to the jury that if there was abuse of authority, that could not be determined in this form of action, but would have to be a different form of action; that we do not regard as law: "One who proceeds lawfully and afterwards abuses the authority conferred is in the same situation as though he had acted without authority." Wilson v. Ellis, 28 Pa. 238; Freeman v. Smith, 30 Pa. 264; 1 Chitty, Pl. 167.

*R. H. Koch,* for defendant in error.—Shaw, at the time the arrest was made by him, was chief of police of the borough of Pottsville, and had been a policeman in said borough for thirteen years, and, as a policeman, had a right to arrest without warrant for all offenses committed in his presence. Wharton, Crim. Pl. & Pr. 8th ed. § 8; Marsh, Constables' Guide, p. 80; City Council v. Payne, 2 Nott & M'C. 475; Flinn v. Graham, 3 Pittsb. 195; 1 Archbold, Crim. Pr. & Pl. § 1, ed. 1850.

He could without warrant arrest any person committing a breach of the peace in his view (4 Bl. Com. 292), and keep him in his house or the stocks until he could bring him before a magistrate. 1 Hale, 587.

Anything that tends to provoke or excite others to break the peace is also a breach of the peace (4 Bl. Com. 150) ; and any-

one provoking others to it, it being a constructive breach of the peace, may be arrested by any officer present.

Any violation of public order is a breach of the peace. 1 Bouvier, Law Dict. p. 219.

Crosland was committing a breach of the peace, or was doing a thing, "tending to provoke or excite others to break it;" which is also a breach of the peace. 4 Bl. Com. 150.

Any constable may, without warrant, arrest a person for a breach of the peace committed in his presence, and deposit the prisoner in jail; and the jailer is bound to receive him. Com. v. Deacon, 8 Serg. & R. 47; Flinn v. Graham, 3 Pittsb. 195; City Council v. Payne, 2 Nott & M'C. 475.

Policemen of the borough of Pottsville have all the powers of constables. Section 25 of an act amendatory to the act incorporating the borough of Pottsville, entitled "An Act to Alter an Act Entitled an Act to Erect the Town of Pottsville, in the County of Schuylkill, into a Borough," etc., affirmed the 4th day of April, 1831, P. L. 439, gives them such powers.

Shaw was executing lawful authority in arresting Crosland; and if he exercised it in a malicious and oppressive manner, he must be sued in case to be made answerable in damages. He cannot be made answerable in trespass for an abuse of authority. Sommer v. Wilt, 4 Serg. & R. 23; Kennedy v. Barnett, 64 Pa. 141; Barnett v. Reed, 51 Pa. 190, 88 Am. Dec. 574; Kramer v. Lott, 50 Pa. 495, 88 Am. Dec. 556; Royer v. Swazey, 10 W. N. C. 432.

PER CURIAM:

The plaintiff in this case had nothing substantial on which to found a legal complaint against the defendant who, being a police officer, was bound to see that a breach of the peace was not committed in his presence. The workmen of the borough were on the highway, engaged in a lawful business. There was a nuisance which the municipality was bound to abate; and if the result of its work would be the occasion of injury to the plaintiff's property, he had his lawful remedy. But, instead of resorting to this remedy, he undertook to prevent the operation of the borough by unlawful means. He was there to prevent the progress of the work by force; he was armed with an ax; he confesses that he did smash the borough's drain pipes, and that he

would have continued so to do but for the interference of the police officer.

Nor did Shaw abuse his authority; he, in the first place, asked the plaintiff, in a civil manner, to desist; and when he refused so to do, there was no more force used than was necessary for his removal. It is thus clear that the defendant did nothing that he was not bound to do; he but interfered to put an end to the unlawful acts of the plaintiff, and to prevent a breach of the peace which was imminent; and if Crosland suffered in consequence thereof, it was because of his own folly.

The judgment is affirmed.